**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO.  A-13-CR-405 LY** |
| | § | |
| **JASON RAY FOSTER** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The undersigned submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b), 18 U.S.C. § 3401(i), and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  The Court conducted a hearing on August 21, 2014, and heard arguments from all of the parties with regard to the U.S. Probation Office's Petition seeking to revoke the Defendant's term of supervised release.

## I. PROCEDURAL BACKGROUND

On January 13, 2014, the Defendant was sentenced to 12 months and one day of imprisonment, followed by ten years of supervised release, for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a).  The Defendant commenced his supervision on March 9, 2014. The Defendant did not have employment or a residence when he commenced supervision. Ordinarily, the Probation Office directs a defendant in these circumstances to reside at a halfway house to allow him to obtain employment and a stable residence.  That in fact was a supervision condition imposed in the judgment.  Dkt. No. 39.   This option was not available here, however, as the Bureau of Prisons and the only halfway house in Austin available to the Probation Office

informed Probation that no space would be available at the halfway house until June 2014 at the earliest. *See* Dkt,. No. 42. Thus, in both May and June 2014, the Court authorized the Defendant to not fulfill the halfway house requirement, as that was not possible. *Id.*; Dkt. No. 43. As chronicled in a recent Report and Recommendation in another case, the projected date when halfway house space will become available has since become a moving target, and is now predicted to be January 2015 or later. *See* Amended Report and Recommendation, Dkt. No. 64 in *United States v. Mullins*, No. A-06-CR-290 LY. As a result of there being no other options for a residence, the Defendant was directed to report to the Austin Resource Center for the Homeless to obtain assistance with housing. The Defendant did so, and has been residing at ARCH since March 2014.

On June 5, 2014, the Court was notified that the Defendant had submitted a urine specimen that tested positive for marijuana. The Defendant admitted to having smoked marijuana with another ARCH resident. The Probation Office admonished the Defendant, but requested no action be taken at that time. On July 14, 2014, the Court was again notified that the Defendant had committed a potential violation of his conditions, when he admitted to his sex offender therapist that on July 9, 2014, he had gone swimming in Barton Creek immediately below the spillway from Barton Springs Pool in Zilker Park, an area frequented by minors. Again the Probation Officer admonished the Defendant, but requested no additional action be taken, and specifically noted that the Defendant had just recently commenced sex offender treatment and was in the orientation phase, which might have contributed to the Defendant's uncertainty regarding whether he was permitted to be in the park. Finally, on August 1, 2014, the Probation Office notified the Court that on July 9, 2014, the Defendant had submitted  a second urine specimen that tested positive for marijuana, and on July 23, 2014, he admitted to having again smoked marijuana. The Probation Office requested

a warrant in this instance, and on August 1, 2014, Judge Lane authorized a warrant. The Defendant was arrested on that warrant August 4, 2014.

On August 21, 2014, the Defendant and his attorney appeared before the undersigned Magistrate Judge for a hearing on the Petition. On the same date, the Defendant and his attorney signed a Consent to Allocution Before United States Magistrate Judge. Pursuant to 28 U.S.C. Section 636(a) and 18 U.S.C. § 3401(i), this Court held a Supervised Release Revocation Hearing, at which time the Defendant pleaded "True" to the marijuana use allegation, and "Not True" to the violation of the lifestyle restriction imposed by his sex offender treatment program. The Court thus heard evidence on the second violation allegation.

## FINDINGS OF THE COURT

1.      The Defendant was competent to stand trial on the charges against him, and had both a factual as well as a rational understanding of the proceedings against him.

2.      The Defendant does not suffer from any physical or mental impairment that would affect his ability to fully understand the charge against him or the consequences of his plea.

3.      The Defendant received a copy of the Petition naming him, and he read it.

4.      The Defendant understood the Petition and the charges against him and had the opportunity to discuss the Petition and charges with his attorney.

5.      The Defendant waived his preliminary hearing.

6.      The Defendant voluntarily gave consent to allocute before a U.S. Magistrate Judge.

7.      The Defendant understood that he had the right to present evidence and to cross-examine witnesses at the hearing, and waived that right.

8.      The Government gave a summary of the evidence against the Defendant.

9.      The plea of true was freely, intelligently, and voluntarily made by the Defendant.

10.     The Defendant understood all of his statutory and constitutional rights.

11.     The Defendant was present in Zilker Park on July 9, 2014, and did not have permission from his Probation Officer to do so.  Zilker Park is a location frequented by minors.

12.     The Defendant violated conditions of his supervised release by (1) using marijuana on tow occasions; and (2) by being in Zilker Park without permission from his Probation Officer.[1]

## III.   RECOMMENDATIONS

This case presents the most recent situation in which the Court's options are seriously compromised by there not being a halfway house available as a supervision condition.  The Defendant is homeless, and without employment.  It was clear at the hearing that the Defendant is sincerely trying to find employment and obtain housing.  He has been successful at ARCH, and has a counselor there working with him on both housing and employment.  He was also working with Goodwill in obtaining work, and had obtained a food handler's permit to increase his job options.  Notwithstanding this, ARCH does not present the sort of structured environment in which the Probation Office can properly supervise someone.  Indeed, the two instances of the Defendant smoking marijuana are examples of this, as the vast majority of the people who frequent ARCH and use its services are under no supervision of any kind, and many are likely to present temptations to

---

[1]As the Court noted on the record at the hearing, this violation was at best a technical violation, which is why the Court did not authorize a warrant to be issued when it was notified of these events in July.  As the Defendant stated at the hearing, he was aware that he was not supposed to be within 1000 yards of an area frequented by minors, and thought he in fact was 1000 yards away from the pool.  However, as explained by his counselor, he should not have been anywhere in Zilker Park without permission, as minors frequent the park as a whole, not just the pool.  It is clear, however, that the Defendant was not deliberately violating this condition, and self-reported it to his sex offender counselor.

someone in the Defendant's situation.  The Probation Office has no control over this.  The Probation Office has made it clear that because it has no control over the conditions at ARCH, and because no halfway house is available, it is uncomfortable (at best) trying to continue to supervise the Defendant.

Having considered all of this, the undersigned RECOMMENDS, based on the original offense and the intervening conduct of the Defendant, that the Defendant's supervised release be REVOKED.  The Court has taken into account the policy statements in Chapter Seven of the Sentencing Guidelines.  The most serious violation is a Grade C, and the Defendant's criminal history category was a IV, resulting in an (advisory) guideline range of 6-12 months of imprisonment.  Having considered all of the above, the undersigned RECOMMENDS that the Defendant be sentenced to 30 days of imprisonment, with no supervised release to follow.[2]

## IV. OBJECTIONS

In writing following the Court stating on the record its recommendation in this case, the parties waived the fourteen day period in which they may file of objections to this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglas v. United Services' Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).  Accordingly, there will be no objections to this Report and Recommendation, and the matter is ripe for the District Court to act upon it.

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

---

[2]Obviously, if there were other options available to the Court, it would recommend continued supervision.  That however is not a viable option for the reasons noted above.

5

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of August, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE